IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRIAN KEITH BARNES, #181 505, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:16-CV-760-ALB |
| | ) | [WO] |
| SGT. THORNTON, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Brian Barnes ["Barnes"], an inmate incarcerated at the Bullock Correctional Facility in Union Springs, Alabama, files the instant civil rights action under 42 U.S.C. § 1983 against Lieutenant Brandon Thornton ["Thornton"]. Barnes alleges Thornton subjected him to excessive force in February 2016 during his incarceration at the Staton Correctional Facility in Elmore, Alabama. Barnes also complains Thornton told inmates he was  snitch  and worked with the internal investigation unit of the prison which placed his life in danger. Finally, Barnes alleges Thornton had him transferred him to another institution to prevent his participation in a rehabilitative drug program which caused a denial of parole. Plaintiff seeks punitive damages and placement in protective custody at Limestone. Doc. 1. The parties request trial by jury. Docs. 13, 24.

Thornton filed a special report and supporting evidentiary materials—including affidavits, prison records, and a video—addressing Barnes' claim for relief. Doc. 14.  In these filings, Thornton denies he acted in violation of Barnes's constitutional rights.  *Id.*

The court issued an order January 20, 2017, directing Barnes to file a response to the arguments set forth by Thornton in his special report and advising Barnes his response should be

supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials. Doc. 16 at 2. This order specifically cautioned the parties that "unless within ten (10) days from the date of this order a party files a pleading which presents sufficient legal cause why such action should not be undertaken . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 16 at 2. Barnes responded to Thornton's report. *See* Doc. 24. Barnes, however, submitted no sworn statements in support of, or in opposition to, Thornton's motion for summary judgment, and therefore he failed to comply with Rule 56(e), *Federal Rules of Civil Procedure*. Further, Barnes did not comply with 28 U.S.C. § 1746 because he did not make an unsworn declaration under penalty of perjury. Accordingly, the allegations in Barnes' unsworn response ("answer") (Doc. 24) may not be considered as evidence when ruling on the motion for summary judgment. *See McCaskill v. Ray*, 279 F. App'x. 913, 915 (11th Cir. 2008) (litigant's unsworn allegations were not admissible on motion for summary judgment where litigant did not attempt to make the declarations under penalty of perjury). Barnes' complaint, however (Doc. 1), was signed under penalty of perjury and is, therefore, treated by the court like a sworn affidavit. *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) ("Where plaintiff has presented specific facts to the trial court, in sworn form, the court may not make such a credibility choice nor may it grant summary judgment against plaintiff on the procedural ground that he did not controvert the factual affidavits that controverted his sworn factual statements."); *Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) (citing *Perry*, 786 F.2d at 1095) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to

defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."). The court will therefore consider Barnes' complaint in ruling on the dispositive motion.

Pursuant to the directives of the order entered on January 20, 2017, the court deems it appropriate to treat Defendant's special report as a motion for summary judgment.  Upon consideration of  motion, the evidentiary materials filed in support thereof, and the sworn complaint, the court concludes the motion for summary judgment is due to be granted in part and denied in part.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Thornton has met his evidentiary burden.  Thus, the burden shifts to Barnes to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981)[1] (holding that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine [dispute] for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[2] *Anderson*, 477 U.S. at

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[2] Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521,

255.   At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint, affidavit or declaration sworn under penalty of perjury may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .   Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion."  *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).   In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24;

---

525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Barnes' *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

*Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).   "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).   "[T]here must exist a conflict in substantial evidence to pose a jury question."  *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court has undertaken a thorough review of the evidence of record.  In this case, Barnes, through the submission of his sworn complaint, has demonstrated a genuine dispute of material fact to preclude entry of summary judgment on his excessive force claim against Defendant Thornton.  No dispute of material fact regarding the remaining claims, however, has been shown which would preclude entry of summary judgment for Defendant Thornton.

## II. DISCUSSION

### A.    The Complaint

In February of 2015 Barnes was in the law library.  Barnes states Thornton assaulted him for no reason by punching him in the face. The officer then escorted Barnes to the shift office where he continued to punch and kick Barnes.  Barnes also alleges Thornton told inmates he was a snitch which placed his life in danger and that in November 2015 when he was transferred back to Staton, Thornton told inmates Barnes was working with I&I. Barnes claims Thornton had him

transferred to prevent him from participating in the SAP ("Substance Abuse Program") program which resulted in a denial of parole. Doc. 1 at 2–3.

## B.    Absolute Immunity

The capacity in which Barnes brings suit against Thornton is not clear from the complaint. To the extent Barnes seeks to sue Thornton in his official capacity, he is entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune  from  claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Thornton is a state actor entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## C.    Excessive Force Claim

### *1.    Qualified Immunity*

Regarding Barnes's claims against Thornton in his individual capacity, Thornton argues he is entitled to qualified immunity. Doc. 14. Qualified immunity offers complete protection from

civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Thornton was acting within the course and scope of his discretionary authority when the incidents occurred. Barnes must, therefore, allege facts that, when read in a light most favorable to him, show Thornton is not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Barnes must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871

F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." See *id*. at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

Regarding Barnes' claim of excessive force, "[u]nder the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.  *Skop [v. City of Atlanta*, 485 F.3d 1130, 1136-1137 (11th Cir. 2007)].  In Eighth Amendment excessive force cases, however, 'the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution.'  *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)."  *Bowden v. Stokely*, 576 Fed. App'x 951, 954-955 (11th Cir. 2014) (per curiam). "While . . . there is no *per se* rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently

alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate.  *See Skrtich [v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)].”  *Bowden*, 576 Fed. App’x at 956.  Accordingly, this court will consider whether Barnes’ allegation that Thornton used excessive force against him for no reason and without provocation, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

### 2. *Excessive Force*

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment’s proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied “in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.” *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: “the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.” *Hudson*, at 7–8, 112 S. Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S. Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, “inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.” *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d  at 1300–01.

In *Hudson v. McMillian*, 503 U.S. at 9, the Supreme Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. On the other hand, “[n]ot every push or shove, even if it

may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson*, 481 F.2d 1028, 1033 (2d Cir. 1973). Whether a defendant's use of force is excessive, and thus violative of an inmate's right to be free from cruel and unusual punishment, "depends on whether the [defendant's] act shocks the conscience, and it necessarily will if the force was applied . . . maliciously and sadistically for the very purpose of causing harm." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (internal quotations and citations omitted). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quotation marks and citation omitted); *Brooks v. Kyler*, 204 F.3d 102, 103 (3d Cir. 2000) (finding there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" to state an excessive force claim).

Notwithstanding the fact that a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show that the application of force resulted in serious injury. *Hudson*, 503 U.S. at 8. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Thus, in an excessive force case such as the one at hand, "the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Bowden*, 576 F. App'x at 953 (internal quotations and citation omitted).

Thornton testifies that on February 18, 2015, he was working as an assistant shift manger and heard a call on  another officer's radio that two inmates had been involved in an altercation in

the chow hall. Inmate Ashley Monroe was brought to the shift office for questioning and informed correctional staff he was unaware why inmate Brian Barnes had assaulted him. Thornton proceeded to the law library where Barnes was being held and testifies to hearing Barnes state he assaulted inmate Monroe to "catch out."[3] Thornton testifies Barnes "continued" to act up, and it seemed to Thornton that Barnes was bragging about "attacking an innocent person to cheat the system again." Because of Barnes' conduct, Thornton testifies he "lost [his] cool" and open-slapped Barnes on the back of the head. Thornton states he then walked away and went to the shift office. Officer McDaniel escorted Barnes to the shift office to obtain his statement. Thornton testifies that he denies seeing Barnes hit or kicked in the shift office. Doc. 14-2 at 2.

Thornton's evidence includes video evidence. Doc. 15-1 (conventionally filed). The video evidence shows Barnes standing by a table. He says something to Thornton as the officer approaches him but remains standing in place. Suddenly Thornton administers two blows to Barnes' head and Barnes falls to the ground. At 5:50 p.m. on February 18, 2015, medical personnel examined Barnes. On examination, medical staff found no sign of any apparent injuries. Doc. 14-2, Doc. 14-5 at 4; Doc. 15 (filed conventionally).

Barnes complains that on February 18, 2015, Thornton used excessive force against him without provocation. While Thornton admits hitting Barnes, he denies he subjected the inmate to excessive force. Specifically, Thornton argues his actions did not rise to the level of excessive force in violation of Barnes' constitutional rights because he (Thornton) was not intending to cause harm, the force used against Barnes was not particularly shocking or excessive, Barnes received a medical evaluation shortly after the encounter which reflected he sustained no visible injuries, and

---

[3] Thornton testifies that "catching out" occurs when an inmate engages in conduct designed to protect them through a transfer or placement in segregation and is typically done when an inmate incurs a debt owed to another inmate which he cannot pay. Doc. 14-2 at 2.

a *de minimis* use of force cannot support a claim for a constitutional violation if the force used was not repugnant to the "conscience of mankind." Doc. 14.

Even though Thornton disputes the version of events presented by Barnes, this court is required at this stage of the proceedings to view the facts in the light most favorable to Barnes and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Correctional Service, Inc*., 739 F.3d 606, 608 (11th Cir. 2014); *Anderson*, 477 U.S. at 255 (all justifiable inferences are to be drawn in favor of the party opposing summary judgment). In that vein, Barnes states Thornton, acting without provocation or purpose, subjected him to an unjustified use of force in the law library and then continued to punch and kick him in the shift commander's office. This version of the events could support an excessive force claim. *Bowden*, 576 Fed. App'x at 954. Thornton admits to hitting Barnes in the law library but denies his conduct amounted to a use of excessive force. He denies seeing Barnes hit or kicked in the shift commander's officer but does not deny Barnes' claim that that he continued his assault on Barnes in the shift office. Doc. 14-2. *See also* Doc. 14-3 at 15. Viewing the facts in the light most favorable to Barnes, the court concludes Thornton is not entitled to qualified immunity as Barnes has alleged facts sufficient to survive Thornton's motion for summary judgment regarding Barnes's excessive force claim. *Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material fact exist regarding the need for the use of force by Thornton, the nature of the force he used, and whether he acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment regarding Barnes' excessive force claim against Defendant Thornton in his individual capacity is due to be denied.

**D.    Eighth Amendment - Conditions Claim**

Barnes alleges Thornton told other inmates he was a "snitch" and was working with prison investigators which endangered his life.  Thornton denies ever calling Barnes a snitch and testifies he does not know of whether Barnes worked with prison investigators. Doc. 14-2.

The court considers Barnes' claim as a challenge to prison conditions under the Eighth Amendment. A convicted prisoner is entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832–34 (194).  And prison officials must take reasonable measures to guarantee the safety of inmates. *Id.* at 832. To demonstrate that a prison official has violated the Eighth Amendment, an inmate must first allege a deprivation that must be objectively sufficiently serious—that there was a substantial risk of serious harm.  *Id.* at 828. Second, the prison official must have a sufficiently culpable state of mind. *Id*. at 834. In prison condition cases, that state of mind is one of deliberate indifference to inmate health or safety. *Id*. To act with deliberate indifference, a prison official must both know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. A prison official who endangers the life or safety of a prisoner by inciting other inmates to harm a prisoner, such as by labeling the prisoner a "snitch" or informant, may violate the Eighth Amendment.  *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984) (per curiam) (allegation that correctional officer endangered prisoner's life by telling other inmates he was a snitch, exposing him to the possibility of inmate retaliation, stated a claim for relief)); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001). Finally, there must be a causal connection between the defendant's conduct and the violation. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014).

Consequently, to survive the properly supported motion for summary judgment filed by Thornton, Barnes must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citation omitted). If he establishes these objective elements, Barnes must then satisfy the subjective component.  To do so, Barnes must show Thornton "subjectively knew that [he] faced a substantial risk of serious harm.  The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

Here, Barnes alleges Thornton told inmates he was a snitch and worked with the internal investigative unit of the prison which placed his safety and life in danger.  Doc. 1 at 3. Barnes, however, does not support his claim with any evidence Thornton actually engaged in the challenged conduct. Barnes identifies no inmates who either heard Thornton call him a snitch or state Barnes was assisting the prison's internal investigation unit, instead relying on his own contention that Thornton did so. Barnes' claim against Thornton is devoid of any factual allegations that give rise to an inference he actually faced a serious threat because of Thornton's conduct.  Even assuming, *arguendo,* Barnes could satisfy the objective component of his Eighth Amendment claim, he has not satisfied the subjective component. Notably, Barnes identifies not a single inmate who represented a threat to him nor has he articulated any incidents of actual or imminent harm because of the alleged identification he attributes to Thornton.  His allegations also do not reflect that he communicated any concerns about his safety to Thornton or any prison official because of the conduct he ascribes to Thornton nor does he allege much less indicate there was ever any actual or imminent threat to his safety disregarded by Thornton or any other prison official. At most, Barnes has done no more than assert in broad and conclusory fashion that

Thornton's alleged actions put his safety at risk but alleges no facts nor produces any evidence to show he faced any actual harm or even threat of actual or imminent harm from any inmate. *See Blackston v. Shook & Fletcher Insulation Co*., 764 F.2d 1480, 1482 (11th Cir. 1985) (citations omitted) ("All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable" as inferences must be based on facts in the record). In light of the foregoing, the court finds Barnes fails to demonstrate an Eighth Amendment violation against Thornton, and he is, therefore, is entitled to qualified immunity.

**E.      Fourteenth Amendment - Transfer Claim**

Barnes maintains Thornton had him transferred from Staton so he could not participate in a substance abuse program ("SAP"). Barnes further contends his inability to attend SAP resulted in a denial of parole. Doc. 1 at 3. Thornton denies Barnes' allegation and maintains he was not involved with nor does he have any authority over decisions made by the parole board or the classification process governing Barnes' admission to the SAP program. Doc. 14-2.

Initially, the court notes the Constitution itself does not give prisoners a liberty in being housed in particular prison or area of the prison,  *Meachum v. Fano*, 427 U. S. 215, 224 (1976), in being granted parole, *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011), or in participating in favorable prison programs. *Sandin v. Conner,* 515 U.S. 472, 484 (1995); *Moody v. Daggett,* 429 U.S. 78, 88 n.9 (1976). Regarding Barnes' claim that Thornton arranged his transfer from Staton to impede his ability to attend SAP, it is undisputed that Thornton had no input or authority over decisions involving Barnes' housing, custody, or prison program placements, or release on parole. An affidavit submitted by the Assistant Classification Director for the Alabama Department of Corrections reflects Barnes was transferred multiple times for many reasons beginning March 2,

2015, until his transfer to Bullock Correctional Facility on March 4, 2016, where he has since remained. Doc. 14-4. The unrefuted prison records regarding Barnes' transfers do not reflect Thornton had any involvement making in those decisions.[4] *See* Doc. 14-3 at 3–9. Consequently, Barnes has not shown Thornton deprived him of any constitutional right to which he is entitled. Thornton is, therefore, entitled to qualified immunity on this claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendant's motion for summary judgment (Doc. 14) be GRANTED in part and DENIED in part as addressed herein.

2.  Defendant's motion for summary judgment regarding Plaintiff's claims for monetary damages lodged against Defendant in his official capacity be GRANTED and these claims be DISMISSED with prejudice as Defendant is entitled to absolute immunity from such relief.

3.  Defendant's motion for summary judgment regarding Plaintiff's excessive force claim lodged against him in his individual capacity be DENIED.

4.   Defendant's motion for summary judgment on Plaintiff's Eighth and Fourteenth Amendment claims  in §§ II(D) and II(E) be GRANTED;

5. This case be set for trial on Plaintiff's excessive force claim against Defendant Thornton.

It is further

ORDERED that **on or before August 30, 2019**, the parties may file an objection. Any objection filed must specifically identify the factual findings and legal conclusions in the

---

[4] The undisputed evidence also reflects Barnes signed a treatment refusal form on July 22, 2015, while incarcerated at the Ventress Correctional Facility  (Doc. 14-3 at 9), indicating his desire to refuse participation in the drug treatment program. He wrote on the form that he was not ready to participate in the substance abuse program because of family problems and wished to wait until he was able to focus completely on the program. Doc. 14-3 at 18; Doc. 14-4 at 2.

Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 16th day of August 2019.


    /s/    Charles S. Coody         
UNITED STATES MAGISTRATE JUDGE